7 So.3d 986 (2008)
Dorothy FALLS
v.
JVC AMERICA, INC.
1051677.
Supreme Court of Alabama.
June 13, 2008.
Rehearing Denied October 17, 2008.
*987 Nat Bryan and Thomas M. Powell of Marsh, Rickard & Bryan, P.C., Birmingham, for appellant.
Brandi B. Frederick and Barry V. Frederick of The Frederick Firm, Birmingham, for appellee.
PARKER, Justice.

I. Background
Dorothy Falls began working for JVC America, Inc. ("JVC"), on November 13, 1986, and continued working for JVC until June 23, 2004, operating winding machines in the tape facility and various machines in the disc facility at JVC's plant. Around June 2003 she was transferred from the tape department to the disc department, and shortly thereafter the tape facility closed. Her primary responsibility in the disc facility involved printing labels.
On August 19, 2003, Falls began to experience headaches, nausea, and weakness. Although the first onset of these symptoms occurred, not at work, but while she was driving her car, she subsequently started experiencing these symptoms upon her arrival at work or shortly thereafter. While she was experiencing these symptoms on August 21, 2003, paramedics took her to the hospital, and she was treated by Dr. Craig Buettner. On August 27, 2003, she again experienced these symptoms and visited Dr. Buettner. Dr. Buettner told her not to return to work and set an appointment for her for September 12, 2003. On that date she told Dr. Buettner that her symptoms had disappeared. At Dr. Buettner's request, she saw a neurologist, Dr. James Geyer, on September 24, 2003. Dr. Geyer found no abnormalities and authorized her to return to work on September 29, 2003. However, her symptoms recurred within five hours of beginning her shift.
When she visited Dr. Buettner again on October 2, 2003, he began to suspect that something at the plant, like a dye or a fume, might be causing an allergic reaction. Shortly thereafter, she saw Dr. Peter Casten, medical director of the DCH Regional Medical Center in Tuscaloosa, which specializes in occupational-health issues. Dr. Casten evaluated her but was unable to determine at that time whether her symptoms were work related. She returned to work on November 11, 2003, and had an immediate onset of symptoms. On that date Dr. Lisa Mani, who worked with Dr. Casten's practice group, saw Falls; Dr. Mani noted that the symptoms occurred only while Falls was at the JVC workplace.
Pursuant to Dr. Buettner's authorization, Falls returned to work again early in June 2004, and within three hours she began to experience symptoms so severe she felt like she would pass out, and she had to leave.
On or about June 21, 2004, Falls returned to work and later that day advised Gail Lawson, her "lead person" at the JVC plant, that she was ill. Lawson told her to see Mike Hall, her superintendent. Hall took her to the Human Resources Department, where she met with Sandy Kornegay and Tom Kizziah. They gave Falls a resignation form, but she refused to sign it and asked for permission to leave to see her doctor, which was granted. Over the next several days she saw Dr. Buettner, her personal physician, and Dr. Casten, JVC's company-approved doctor.
On the evening of June 22, 2004, Falls received a telephone message asking her to contact Felicia Gross with JVC. Gross was responsible for overseeing JVC's workers' compensation claims and making medical appointments for work-related injuries. Falls spoke with Gross, and Gross made an appointment for her with Dr. Casten for June 23, 2004, at 1:00 p.m.
*988 On June 23, 2004, Gross spoke with Victor Hamner, the plant manager, concerning Falls. She testified that they discussed whether Falls's case could result in a worker's compensation claim. Hamner instructed Gross to arrange for Falls to see him before she saw Dr. Casten.
Falls met with Hamner at 1:00 p.m. on June 23, 2004. She told Hamner that she could not work in the plant without becoming physically ill. Hamner told her she would have to resign or she would be terminated. She answered that she could not return to work in the plant,[1] but she refused to resign. Hamner therefore terminated Falls's employment. Her termination notice read:
"Dorothy Falls is being terminated today for the following 2 reasons: (1) Lack of dependability; and (2) She has expressed to us that she can no longer work in this facility.
"Dorothy has not returned to work since her leave of absence ended 6/10/04. Sandy Kornegay, Tom Kizziah, and Mike Hall met with Dorothy on June 21/04 and she told them at that time that she gets sick as soon as she walks through the door of JVC, and she expressed that she cannot work in this building."
Falls filed a complaint against JVC in the Tuscaloosa Circuit Court, alleging that JVC had fired her in retaliation for her filing or intending to file a worker's compensation claim (CV-04-1558); she also filed a worker's compensation claim against JVC in the Tuscaloosa Circuit Court.[2]
The trial court entered a summary judgment in favor of JVC in Falls's retaliatory-discharge case, finding:
"It is undisputed from the evidence that the decision to terminate [Falls] from her employment at JVC was made on 6/22/04.... [JVC employees and officials] testified that on 6/22/06,[[3]] they had no knowledge that [Falls] was claiming that her medical condition was related to her occupation at JVC. The only testimony regarding knowledge of the claim for worker's compensation benefits came from a conversation [Falls] had with Felicia Gross, who played no role in [JVC's] decision to terminate [Falls's] employment. This conversation took place on 6/23/04, and after the decision to terminate [Falls] had been made by others. It is also undisputed that on 6/22/04, Sandy Kornegay called [Falls] after the decision makers' meeting, and gave her a choice of resigning or being terminated. Since the decision to terminate [Falls] was made on 6/22/04, [Falls's] workman's compensation claim could not be the sole motivating factor in [Falls's] termination.
"There is a failure of proof of specific knowledge of [Falls's] claims for workman's compensation benefits on the part of the decision makers, at the time she was terminated, and that the knowledge of her workman's compensation claim was the sole motivating force behind [Falls's] termination. Therefore, there *989 is a critical link missing in the chain of [Falls's] burden of proof. Since [Falls] is unable to prove all the elements of a prima facie case, [JVC] is entitled to judgment as a matter of law.
"Summary judgment is therefore granted in favor of the defendant JVC on [Falls's] retaliatory discharge claim."
Falls has appealed that summary judgment to this Court.

II. Standard of Review
This Court set forth the appropriate standard of review of a summary judgment in Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992):
"[O]ur review of a summary judgment is de novo; that is, we must examine all the evidentiary submissions that were presented to the trial court. Tolbert v. Gulsby, 333 So.2d 129 (Ala.1976). The two-tiered standard of review for summary judgment has been repeatedly stated: (1) there must be no genuine issues of material fact, and (2) the movant must be entitled to a judgment as a matter of law. Ala. R. Civ. P. 56(c), Tripp v. Humana, Inc., 474 So.2d 88 (Ala.1985). Further, on review of a summary judgment, we must view all the evidence in a light most favorable to the nonmovant and we must entertain all reasonable inferences from the evidence in favor of the nonmovant. Fincher v. Robinson Bros. Lincoln-Mercury, Inc., 583 So.2d 256 (Ala.1991). See, also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
"The party moving for a summary judgment must make a prima facie showing that there are no genuine issues of material fact and that he is entitled to a judgment as a matter of law, Fincher, 583 So.2d at 257. If this showing is made, the burden then shifts to the non-movant to rebut the movant's prima facie showing by `substantial evidence.'"
(Footnote omitted.)

III. Analysis
In 1984 the Legislature established, as part of the Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975, a cause of action for retaliatory discharge based on the plaintiff's filing a claim for worker's compensation benefits:
"No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter...."
Ala.Code 1975, § 25-5-11.1. In Alabama Power Co. v. Aldridge, 854 So.2d 554, 563 (Ala.2002), this Court articulated the following test for determining whether a plaintiff may recover for retaliatory discharge under § 25-5-11.1:
"In order for an employee to establish a prima facie case of retaliatory discharge the employee must show: (1) an employment relationship, (2) an on-the-job injury, (3) knowledge on the part of the employer of the on-the-job injury, and (4) subsequent termination of the employment based solely upon the employee's on-the-job injury and the filing of a workers' compensation claim."
JVC does not dispute that Falls had an employment relationship with JVC, that Falls developed a medical condition during the course of that employment, or that JVC knew of that medical condition. JVC, however, does dispute that Falls's medical condition was caused by or was related to her job and therefore disputes that JVC knew that Falls's medical condition was caused by or was related to her job. JVC strongly denies that the termination of Falls's employment was based solely upon *990 her medical condition and her filing of a worker's compensation claim.
We will focus upon the fourth prong of the Aldridge test, which is dispositive: whether the termination of Falls's employment was based solely upon her medical condition and her filing of a worker's compensation claim based on that condition. We will not elaborate on the second and third prongs of the Aldridge test, because resolution of those issues is not necessary to the resolution of this case.
We first observe that, according to the Aldridge test, the "subsequent termination" of Falls's employment must have been "based solely upon [her] on-the-job injury and the filing of a workers' compensation claim." Aldridge, 854 So.2d at 563. However, Falls testified that she did not file a worker's compensation claim until after JVC terminated her employment. Thus, the question is whether the termination of her employment can be considered "subsequent" to her filing a worker's compensation claim and whether the sole reason for her discharge was her filing of a worker's compensation claim.
Falls argues that "[s]ection 25-5-11.1 does not require formal commencement of a civil action as a prerequisite to recovery. Hexcel Decatur, Inc. v. Vickers, 908 So.2d 237, 242 (Ala.2005) (citing cases and refusing to overrule precedent to that effect)." Hexcel Decatur did hold that § 25-5-11.1 does not require, in a retaliatory-discharge action, that a civil action seeking worker's compensation benefits be filed before the termination of the plaintiff's employment. The Court in Hexcel Decatur agreed with the plaintiff's argument that "only a claim for benefits need be made before the employment is terminated in order for a former employee to maintain a retaliatory-discharge action." Hexcel Decatur, 908 So.2d at 239. The Court in Hexcel Decatur refused to overrule Tyson Foods, Inc. v. McCollum, 881 So.2d 976 (Ala.2003), and McClain v. Birmingham Coca-Cola Bottling Co., 578 So.2d 1299 (Ala.1991), both of which had held that the filing of a worker's compensation claim, without the institution of a civil action seeking worker's compensation benefits, was sufficient to meet the requirement of § 25-5-11.1.
However, Falls does not meet the requirement of § 25-5-11.1, even as interpreted by Hexcel Decatur, Tyson Foods, and McClain. Those cases held that § 25-5-11.1 could be satisfied if a worker's compensation claim is filed before the former employee's employment is terminated. There is no evidence indicating that Falls had filed a claim or even that she had talked about filing a claim before JVC terminated her employment. The only evidence of a retaliatory discharge is Gross's testimony that she told Hamner that Falls's injury could involve a "possible Worker's Comp claim." To treat Falls's discharge as a retaliatory discharge, we would have to be convinced that Hamner terminated Falls's employment in retaliation for her possibly filing a worker's compensation claim that she had not filed or even talked about filing. And even if we were to be so convinced, treating her termination as a retaliatory discharge would stretch § 25-5-11.1 far beyond the outer limits of Hexcel Decatur, Tyson Foods, and McClain. Falls has failed to establish that she had commenced any kind of worker's compensation claim before JVC terminated her employment.
If the Legislature desires to expand § 25-5-11.1 so that a retaliatory discharge would include terminations of employment in anticipation of workers' compensation claims, it may do so by amending the statute. Unless and until the Legislature does so, however, we must interpret the statute as written. Because the statute *991 uses the verb phrase "has instituted or maintained" in relation to an action to recover worker's compensation benefits, it is clear that § 25-5-11.1 contemplates an action for a termination of employment in retaliation against an event, i.e., the filing of a worker's compensation claim, that has already occurred.

IV. Conclusion
Alabama's Workers' Compensation Act provides compensation for employees who are injured and/or disabled on the job. Falls has testified that she filed an action seeking worker's compensation benefits after her employment with JVC was terminated. We have been provided with no information as to the status or outcome of that action, and we make no judgment concerning its merits.
The case before us is limited to Falls's claim of a retaliatory discharge under § 25-5-11.1. Under the facts of this case, Falls is unable to establish a prima facie case that she was discharged by JVC in retaliation for making a claim for benefits under the Workers' Compensation Act. Therefore, the trial court did not err in entering a summary judgment for JVC, and we affirm that summary judgment.
AFFIRMED.
See, WOODALL, STUART, SMITH, BOLIN, and MURDOCK, JJ., concur.
LYONS, J., concurs specially.
COBB, C.J., concurs in part and concurs in the result.
LYONS, Justice (concurring specially).
I concur in the main opinion, which refuses to recognize a claim of retaliatory discharge pursuant to § 25-5-11.1, Ala. Code 1975, under the circumstance here presented, when the former employee had not filed a claim for benefits under the Workers' Compensation Act at the time she was discharged. Although the potential for injustice remains in the context where an employer fires an unconscious employee as the employee is being loaded into an ambulance, any expansion of the statutory remedy for a retaliatory discharge to meet circumstances where the employer knew or should have known of the likelihood of a claim is a matter for the legislature.
In addition to the above-described window of opportunity to be used by an employer to foreclose the statutory remedy, this Court's recent decision in Blue Circle Cement Inc. v. Phillips, 989 So.2d 1025 (Ala.2007), opened a second window of opportunity in case the first window is missed. Under Blue Circle, an employee can be discharged after claiming benefits but before reaching maximum medical improvement, and the employer can defeat the subsequent retaliatory-discharge action by proof of the employee's inability to work as the reason for discharge. As I stated in my dissent in Blue Circle, the defense of inability to perform as a basis for an employee's discharge should not be available absent proof of the futility of further rehabilitation pursuant to benefits available to the employee under the Workers' Compensation Act. I was in a small minority in Blue Circle; the correction of this injustice, therefore, is also a matter for the legislature.
COBB, Chief Justice (concurring in part and concurring in the result).
I concur in the holding that under the facts of this case Falls has failed to establish a prima facie case of retaliatory discharge under Ala.Code 1975, § 25-5-11.1. However, to the extent that the main opinion might be read as authority for the proposition that filing a worker's compensation claim is a necessary prerequisite for establishing a prima facie case of retaliatory *992 discharge in every case, I concur only in the result.
NOTES
[1] Falls testified that she had occasionally worked for brief periods in the packaging department of the disc facility, and that while she was working in the packaging department her symptoms became less severe but did not disappear. She did not consider a transfer to the packaging department to be an acceptable option because her symptoms, although less severe, were still present and because those who worked in packaging were temporary employees whose wages were less than hers.
[2] The merits of Falls's worker's compensation claim are not before this Court in this appeal.
[3] This is apparently a typographical error. The date should be "6/22/04."