[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13844
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cv-00487-JB-B

STACY DENEVE,

Plaintiff-Appellant,

versus

DSLD HOMES GULF COAST, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(May 21, 2021)

Before WILSON, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

In this employment-discrimination case, Stacy Deneve sued his former employer, DSLD Homes Gulf Coast, LLC's ("DSLD"), alleging claims of age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, disability discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 & 12203, and retaliatory discharge under the Alabama Workers' Compensation Act, Ala. Stat. § 25-5-11.1. The district court granted summary judgment to DSLD, and Deneve appeals. After careful review, we affirm.

## I.

DSLD is a residential home builder that began constructing homes in the south Alabama market in 2014. On September 1, 2015, DSLD hired Deneve (age 59) in the dual role of quality care technician ("QC tech") and customer care/warranty technician ("warranty tech"). Deneve had a dual role at that time because DSLD was just starting out in that market, though DSLD later separated the roles once DSLD's business increased. Reid Hill was Deneve's immediate supervisor.

As a QC tech, Deneve was responsible for inspecting houses once construction was complete, identifying any deficiencies or items that needed to be corrected before the house was offered for sale, and submitting inspection reports. Once a customer purchased a house, Deneve, in the role of warranty tech, worked with the customer to identify and make any necessary repairs that were covered by

the one-year warranty. He was required to communicate with the homeowner, perform periodic inspections, document needed repairs, and then either repair the issue himself or arrange for a subcontractor to do the work.

Deneve suffered the first of two workplace injuries on August 5, 2016, while inspecting an attic. He injured his left hip and groin and was temporarily restricted from certain work activities. He reported the injury to Hill and filed a claim for workers' compensation benefits. He received benefits for this injury.

As DSLD's business increased, so too did Deneve's workload. As a result, in February or March of 2017 DSLD split Deneve's job into two positions and hired another person (age 53) to take over the warranty tech duties. Deneve remained responsible for the QC tech duties. At that time, Deneve was handling 180% of the recommended volume for his position. Hill was aware that Deneve was being overworked.

Deneve again suffered a workplace injury to his left hip on May 31, 2017. Deneve immediately called Hill to report the injury. Hill did not answer the call, but Deneve left a voicemail message informing Hill of his injury and asking that Hill call him back if "he had any additional questions or if we needed to do some type of followup." In the message, Deneve said he was sore but okay and did not indicate he might need medical treatment. Deneve expected Hill to call him back, but Hill did not, and they never discussed the incident again. Deneve eventually began

3

seeing a chiropractor due to lingering pain. He did not tell DSLD that the chiropractic treatments were related to his injury or request workers' compensation benefits. Nevertheless, he believed that he did all that was needed by reporting the injury to Hill.

In mid-June 2017, roughly two weeks after Deneve's second workplace injury, DSLD interviewed Tanner Barnes, age 25, for a QC tech position. Barnes was hired on July 17, 2017, to take over Deneve's job, though Hill did not inform Deneve that he was being considered for termination or that his performance was unsatisfactory. Around the same time that Barnes was hired, Hill changed Deneve's job duties to assisting superintendents with "punch out" items, such as fixing sheetrock and painting trim.

Deneve's employment was terminated on August 30, 2017. The termination documentation lists "job performance" as the reason, and Deneve was told by Hill and Danny Pierce, Hill's supervisor, that he "did not meet their expectations." When Deneve asked for clarification because he did not know what he had done wrong, they would not provide any specific examples of his performance issues. It is undisputed that Deneve never received any formal discipline or corrective action during his employment.

## II.

After exhausting his administrative remedies, Deneve sued DSLD in federal court in November 2018 raising claims of disability discrimination and retaliation under the ADA, age discrimination under the ADEA, and workers' compensation retaliation under Alabama state law. DSLD answered the complaint and then, following discovery, moved for summary judgment, contending that it fired Deneve because he did not satisfactorily perform any of the three jobs he held with DSLD and that his claims otherwise failed. The district court granted DSLD's motion for summary judgment, and this appeal followed.

## III.

We review the grant of summary judgment *de novo*. *Williamson v. Brevard Cty.*, 928 F.3d 1296, 1304 (11th Cir. 2019). "We view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Alston v. Swarbrick*, 954 F.3d 1312, 1317 (11th Cir. 2020) (quotation marks omitted). Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

At the summary-judgment stage, the judge's function is not to weigh the evidence but to determine if there is a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* Therefore, summary judgment may be granted "[i]f the evidence is merely colorable or is not significantly probative." *Id.* at 249–50 (citations omitted).

## IV.

Deneve first argues that the district court erred in granting summary judgment on his ADEA claim. In his view, DSLD failed to meet its burden to produce evidence of a legitimate, nondiscriminatory reason for his termination. He also asserts that a reasonable jury could conclude that DSLD's explanation is not credible and that he was actually terminated due to a perception that he was too old and accident prone.

## A.

The ADEA prohibits private employers from firing an employee who is at least 40 years of age "because of" the employee's age. 29 U.S.C. §§ 623(a)(1), 631(a). "[T]he language 'because of' . . . means that a plaintiff must prove that discrimination was the 'but-for' cause of the adverse employment action." *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013). This standard is met if the plaintiff's age played a role in the employer's decision-making process and had a determinative influence on the outcome. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

We ordinarily evaluate ADEA claims based on circumstantial evidence, which is what Deneve relies on here, under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Sims*, 704 F.3d at 1333. Once the plaintiff makes out a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*). If the employer provides a legally sufficient explanation, the plaintiff then has the opportunity to prove that the employer's reasons are a pretext for discrimination, which merges with the ultimate burden of proving discriminatory intent. *Id.* at 1024–25.

The employer's "intermediate burden is exceedingly light." *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1061 (11th Cir. 1994) (quotation marks omitted). It is "merely one of production; [the employer] need not persuade the court that it was actually motivated by the proffered reasons." *Chapman*, 229 F.3d at 1024 (quotation marks omitted). Nonetheless, "the defendant's explanation of its legitimate reasons must be clear and reasonably specific so that the plaintiff be afforded a full and fair opportunity to demonstrate pretext." *Id.* at 1034 (quotation marks omitted).

Regarding pretext, a plaintiff may create an inference of discriminatory intent "by showing that [the employer's] proffered reasons are not credible." *Alvarez v.*

*Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010). To show than an employer's reason is not credible, the plaintiff "must meet that reason head on and rebut it," *Chapman*, 229 F.3d at 1030, demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's rationale," *Holland v. Gee*, 677 F.3d 1047, 1055-56 (11th Cir. 2012) (quotation marks omitted). But plaintiffs may not recast the reason or merely quarrel with its wisdom. *Chapman*, 229 F.3d at 1030. It is not our role to second-guess the business decisions of employers. *Id.* Our concern is whether an employment decision was motivated by unlawful discriminatory animus, not whether the decision was prudent or fair. *Id.*

## B.

Here, the district court did not err in granting DSLD's motion for summary judgment. Deneve established a *prima facie* case of discrimination: he was at least 40 years old when he was terminated and replaced by a much younger individual.

While Deneve contests whether DSLD met its intermediate burden, his arguments go more to the credibility of DSLD's evidence—pretext, in other words— not whether it met its "exceedingly light" burden of articulating a legitimate, nondiscriminatory reason for his termination. *Turnes*, 36 F.3d at 1061. DSLD met its burden here with documentary evidence of emails related to Deneve's job performance and testimony from Hill, Deneve's immediate supervisor and the person who recommended his termination, among other evidence.

8

Hill testified that he decided to terminate Deneve due to a "conglomeration" of issues with his job performance. In particular, Hill stated that Deneve failed to consistently send timely inspection reports, that customers called to complain about Deneve on a weekly basis, that Deneve was missing items during the quality-control inspections, and that Deneve was not making repairs as directed once he transitioned to the punch out job. Consistent with this testimony, DSLD produced emails to or about Deneve that reflected missing inspection reports, work not being scheduled or inaccurately listed as completed, and customer complaints about Deneve relating to lack of communication and repairs not being made in a timely fashion. Although, as Deneve asserts, Hill did not contemporaneously receive all these emails and did not directly rely on the emails in deciding to terminate Deneve, he received some of them and he testified that he discussed the kinds of issues referenced in the emails with others before terminating Deneve. Thus, the emails corroborated Hill's testimony regarding his pretermination concerns with Deneve's job performance.

Deneve responds that Hill's testimony was vague and subjective. But "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman*, 229 F.3d at 1034. There is no requirement, as Deneve asserts, that a subjective reason be supported by objective employment records. *See id.* Hill's testimony, combined with the documentary and other

9

evidence, was "clear and reasonably specific" enough—identifying several specific issues with Deneve's job performance that were supported by documentary evidence—to permit Deneve "a full and fair opportunity to demonstrate pretext." *See id.* We turn to that issue now.

Deneve maintains that he presented sufficient circumstantial evidence for a reasonable jury to conclude that DSLD's explanation for his termination was a pretext for discrimination. We disagree.

Deneve largely does not contest the specific issues cited by Hill for recommending his termination. Instead, he contends that the performance issues would not have led a reasonable employer to terminate him because he did not receive any discipline or even warnings about his performance. However, the types of issues identified by Hill—customer complaints in a customer-service role and failure to timely and completely finish job duties—plainly might motivate a reasonable employer to terminate an employee. *See Chapman*, 229 F.3d at 1030. And while perhaps a sense of fair play might suggest that an employer issue a warning to an employee who is failing to meet expectations to allow that employee a chance to try to correct his deficiencies, there is no evidence that DSLD failed to follow its own internal procedures by not issuing discipline or warnings before firing Deneve. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006) ("[A]n employer's deviation from its own standard procedures may

10

serve as evidence of pretext."). In fact, Hill testified that Barnes, Deneve's younger replacement, was likewise fired for poor job performance without prior discipline or warnings.

Deneve also claims that the performance issues were attributable to his heavy workload and that Hill exaggerated the number of customer complaints, but he cannot show pretext by merely quarreling with the wisdom or fairness of DSLD's reasons. *See Chapman*, 229 F.3d at 1030; *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We have repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law. We are not in the business of adjudging whether employment decisions are prudent or fair." (citation omitted)). In any case, the performance issues identified by DSLD were not limited to times when Deneve had a heavy workload because of his dual role, and the number of complaints reflected in the emails does not contradict Hill's testimony that he was "dealing with customers every week" regarding Deneve because Hill testified that the customers communicated by both email and phone.

Deneve's other pretext arguments fare no better. He asserts that DSLD's justification was "after-the-fact" because Hill, at the time he made the termination decision, did not have possession of the emails which were produced by DSLD. But the emails document contemporaneous issues with Deneve's job performance that

11

were consistent both with what Hill told Deneve upon terminating him—that he was not meeting DSLD's expectations—and with the reasons Hill offered in his deposition testimony. Hill also testified that he discussed similar issues with others, such as Pierce, before terminating Deneve's employment. So this is not the type of situation where a reasonable jury could conclude that DSLD concocted a post hoc justification for a discriminatory firing.

Finally, Deneve points to the timeline of his termination and the fact that he was fired not long after he suffered a second workplace injury. But temporal proximity alone is insufficient to establish pretext. *See Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1137 n.15 (11th Cir. 2020) (*en banc*) ("While close temporal proximity between the protected conduct and the adverse employment action can establish pretext when coupled with other evidence, temporal proximity alone is insufficient."). And we conclude, for the reasons we have already explained, that there is not sufficient other evidence of pretext in the record to create a genuine issue of material fact on that issue.[1]

In sum, we affirm the grant of summary judgment on Deneve's ADEA claim.

---

[1] Deneve identifies various purportedly disputed facts, but he does not connect them with a theory of pretext or explain why they establish a genuine issue of material fact as to that issue. We conclude that the disputed facts either are not material or are insufficient to establish pretext for the reasons explained above.

**V.**

Deneve next contends that the district court erred in holding that an Alabama workers' compensation retaliation claim requires the actual filing of a claim for benefits. He also contends that he established pretext in DSLD's explanation.

Alabama law provides that "[n]o employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits." Ala. Code § 25-5-11.1. To make out a *prima facie* case under this statute, a plaintiff must prove all of the following: (1) an employment relationship; (2) an on-the-job injury; (3) his employer's knowledge of the injury; and (4) termination based solely on his injury and his filing of a workers' compensation claim. *Falls v. JVC Am., Inc.*, 7 So. 3d 986, 989 (Ala. 2008).

In *Falls*, the Alabama Supreme Court held that it was "clear that § 25-5-11.1 contemplates an action for a termination of employment in retaliation against an event, i.e., the filing of a worker's compensation claim, that has already occurred." *Id.* at 990–91. Due to the statute's use of the phrase "has initiated or maintained," the court stated that it could not be expanded to "include terminations of employment in anticipation of workers' compensation claims" without legislative amendment. *Id.* Because the plaintiff in that case "had not filed or even talk about filing" a

13

workers' compensation claim, the court concluded that she failed to establish a *prima facie* case under the statute. *Id.* at 990.

Deneve maintains that *Falls* is distinguishable because, in contrast to the plaintiff in *Falls*, Deneve notified his employer of his injury and therefore of his intent to file a workers' compensation claim. Even if we assume he provided adequate notice, however, *Falls* remains controlling. It is undisputed that Deneve did not file a workers' compensation claim related to the second injury. And there is no cause of action under the statute for "terminations of employment in anticipation of workers' compensation claims." *Id.* Accordingly, Deneve cannot base a retaliatory discharge claim under § 25-5-11.1 on his second injury in May 2017.

As for Deneve's arguments regarding pretext, his prior workers' compensation claim based on his August 2016 injury is too remote from his August 2017 termination to create an inference of causation. *See Coca-Cola Bottling Co. Consol. v. Hollander*, 885 So. 2d 125, 130–31 (Ala. 2003) ("Close temporal proximity between the claim and the termination must be so coincidental as to raise an inference that the claim caused the termination."); *Ala. Power Co. v. Aldridge,* 854 So. 2d 554, 564-65 (Ala. 2002). And his contention that there is sufficient circumstantial evidence to show pretext in the employer's rationale fails for the same reasons as his pretext arguments regarding his ADEA claim.

**VI.**

Finally, Deneve argues that the district court erred by looking to caselaw that predated the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, effective January 1, 2009, which specified that the definition of "disability" should be construed in favor of broad coverage. *See* 42 U.S.C. § 12102(4)(A). But Deneve does not address the district court's alternative, independent determination that he was not a "qualified individual" under the ADA. *See D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1225 (11th Cir. 2005) ("The statute protects, however, only *qualified individuals* with disabilities." (emphasis in original)).

"To obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against him is incorrect." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). When an appellant fails to address on appeal an independent ground for the judgment, "it follows that the judgment is due to be affirmed." *Id.*

Here, even assuming Deneve was disabled within the meaning of the ADA as amended by the ADA Amendments Act of 2008, he has abandoned any challenge to the district court's independent determination that he was not a "qualified individual" by failing to address it on appeal. *See id.* Nor does he request remand on his ADA claims, stating instead that he "seeks to clarify the appropriate standard

15

to be applied." But doing so would have no effect on the judgment, so we affirm without further discussion.

**AFFIRMED.**